UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA D.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____/

Case No. 24-12271

Curtis Ivy, Jr.
United States Magistrate Judge

**OPINION AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 9, 11)**

Plaintiff Amanda D. brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act.  This matter is before the Court on Plaintiff's motion for summary judgment (ECF No. 9), the Commissioner's cross-motion for summary judgment (ECF No. 11), Plaintiff's reply (ECF No. 12) and the administrative record (ECF No. 6).

For the reasons below, Plaintiff's motion for summary judgment is **DENIED**, the Commissioner's motion for summary judgment is **GRANTED**, and the administrative decision is **AFFIRMED**.

I.      **DISCUSSION**

### A.     Background and Administrative History

Plaintiff alleges her disability began on April 11, 2022, at the age of 33.

(ECF No. 6-1, PageID.35).  On April 21, 2022, she applied for disability insurance

benefits and supplemental security income.  (*Id.*).  In her disability report, she

listed ailments which diminished her ability to work.  The ailments included:

limited mobility in her right hand and leg, intermittent low vision in her right eye,

and multiple sclerosis.  (*Id.* at PageID.251).  Her application was denied on

September 23, 2022.  (*Id.* at PageID.35).

Following the denial, Plaintiff requested a hearing by an Administrative Law

Judge ("ALJ").  On August 23, 2023, ALJ Donald D'Amato held a hearing, at

which Plaintiff and a vocational expert testified.  (*Id.* at PageID.52-71).  On

October 13, 2023, the ALJ issued an opinion, which determined that Plaintiff was

not disabled within the meaning of the Social Security Act.  (*Id.* at PageID.46).

Plaintiff later submitted a request for review of the hearing decision.  On July 25,

2024, the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageiD.18-

21).  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on August 30, 2024.

### B.     Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

2

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[1]  The

Plaintiff has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five to demonstrate that there is work available in the

national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the

burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing

*Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since April 11, 2022, the alleged onset date.  (*Id.* at

---

[1] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

PageID.37).  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments: multiple sclerosis ("MS"), migraines, degenerative changes of the

cervical spine, adjustment disorder, depressive disorder, neurocognitive disorder,

and obesity.  (*Id.* at PageID.38).  At **Step 3**, the ALJ found that Plaintiff did not

have an impairment or combination of impairments that met or medically equaled

the severity of one of the listed impairments.  (*Id.* at PageID.38-39).  **Between**

**Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual

functional capacity ("RFC")[2] and determined that Plaintiff had the RFC to perform

sedentary work with several limitations.  (*Id.* at PageID.39-44).  At **Step 4**, the ALJ

determined that Plaintiff was unable to perform any past relevant work.  (*Id.* at

PageID.44).  At **Step 5**, considering Plaintiff's age, education, work experience,

and RFC, the ALJ determined there were existing jobs in significant numbers

within the national economy that Plaintiff could perform, such as assembler,

packer, and inspector.  (*Id.* at PageiD.45).  The ALJ therefore concluded that

Plaintiff had not been under a disability, as defined in the Social Security Act,

since September 6, 2016, the date the application was filed.

    **D.**    **Standard of Review**

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.     Analysis

Plaintiff's appeal focuses on two arguments—(1) the ALJ did not sufficiently articulate his Step Three finding that Plaintiff's MS did not meet or medically equal a listed impairment and (2) the ALJ failed to consider Plaintiff's fatigue when crafting the RFC.  The Court finds that neither argument requires remand to the Commissioner.

#### 1.     Step Three Articulation

At step three, the ALJ compares a claimant's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless

of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each

Listing describes "the objective medical and other findings needed to satisfy the

criteria of that listing." 20 C.F.R. § 404.1525(c)(3). If a claimant meets or

medically equals all of the criteria for a listed impairment, she is disabled;

otherwise, the evaluation proceeds to step four. 20 C.F.R. § 404.1520(d)-(e); *see*

*also Rabbers*, 582 F.3d at 653 ("A claimant must satisfy all of the criteria to meet

the listing."). Plaintiff bears the burden to show she has an impairment or

combination of impairments that meets or medically equals the criteria of an

impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; *see Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii).

The ALJ's reference to Plaintiff's MS at Step Three is brief. He wrote, "The

claimant's physical impairments do not meet or medically equal any listed

impairment including . . . those in listing 11.00 concerning neurological

impairments." (ECF No. 6-1, PageID.38). Plaintiff faults the ALJ for not

explaining which listing within 11.00 he is referring to. She insists that she meets

Listing 11.09 because her fatigue "greatly affects her ability to function on a day-

to-day basis and that her medical records are filled with statements of fatigue."

(ECF No. 9, PageID.696).

The Sixth Circuit "has consistently rejected a heightened articulation

standard, noting . . . that the ALJ is under no obligation to spell out 'every

7

consideration that went into the step three determination' or 'the weight he gave

each factor in his step three analysis,' or to discuss every single impairment."

*Andrews v. Comm'r of Soc. Sec.*, 2013 WL 2200393, at \*12 (E.D. Mich. May 20,

2013) (citing *Staggs v. Astrue*, 2011 WL 3444014, at \*3 (M.D. Tenn. Aug. 8,

2011)). "[I]t is well-settled that the Court may look at the rest of the ALJ's

decision in order to determine whether substantial evidence supports the ALJ's

Step Three determination." *Smukala v. Comm'r of Soc. Sec.*, 2016 WL 943953, at

\*10 (E.D. Mich. Feb. 23, 2016). "[T]he procedure [is not] so legalistic that the

requisite explanation and support must be located entirely within the section of the

ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly

endorsed the practice of searching the ALJ's entire decision for statements

supporting his step three analysis." *Staggs*, 2011 WL 3444014, at \*12 (citing

*Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). And "the ALJ need

not discuss listings that the applicant clearly does not meet. . . . If, however, the

record 'raise[s] a substantial question as to whether [the claimant] could qualify as

disabled' under a listing, the ALJ should discuss that listing." *Pasiak v. Comm'r of*

*Soc. Sec.*, 800 F. App'x 301, 304 (6th Cir. 2019) (quoting *Sheeks v. Comm'r of Soc.*

*Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)).

　　　The ALJ's Step Three conclusion on the MS diagnosis is conclusory, but the

hearing decision as a whole provides a much more extensive review of the medical

evidence supporting the ALJ's Step Three conclusion.  (*See* ECF No. 6-1, PageID.40-44).  And that discussion shows that there is no substantial question about whether Plaintiff meets or medically equals the listing, so no heightened articulation was required at Step Three.

The relevant listing here is 11.09 for MS.  Plaintiff suggests she meets Listing 11.09 for MS because her fatigue impacts her day-to-day activities and she mentions that she has MRIs of her spine, but she failed to explain why the results of those MRIs meet or equal the listing.

To meet the MS listing, a person must show either: (A) "disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use of the upper extremities" or (B) a marked limitation in physical functioning and in either "understanding, remembering, or applying information; or interacting with others; or concentrating, persisting, or maintaining pace; or adapting or managing oneself[.]" 20 C.F.R. § 404, subpt. P, app. 1, § 11.09 (cleaned up).  An "extreme limitation" means the *inability* to stand from seated or maintain balance while standing and walking without assistance, or using the upper extremities for work-related activities.  *Id.* at 11.00(D)(2).  Marked limitation means being "seriously limited" in these areas.  *Id.* at 11.00(G)(2)(a).

Though Plaintiff insists she *meets* the listing, she points to no evidence that exactly matches what the listing requires.  There is no evidence of an *inability* to stand or walk or use her upper extremities.  She testified about using a cane or wheelchair, but no medical evidence, such as a doctor's prescription or observations of impaired gait, verifies that she indeed required the use of an assistive device to stand or walk.  Nor is there evidence of a marked or serious limitation in physical functioning *and* in any of the three mental health areas listed in (B).  The ALJ noted Plaintiff's "vague" reference to some short- and long-term memory difficulties during a medical encounter, (ECF No. 6-1, PageID.42), but this reference does not establish a marked limitation in remembering.  Finally, her complaints of fatigue do not meet the listing.

Perhaps Plaintiff intended to argue that her symptoms *medically equal* the listing.  Still, she has not met her burden to prove her case.  If a claimant's impairment does not meet a listed impairment, the claimant will still be found disabled at step three if her impairment is the medical equivalent of a listing.  20 C.F.R. § 404.1520(a)(4)(iii).  Medical equivalence exists if medical findings related to the impairment are at least of equal medical significance to the findings necessary to meet the listings.  20 C.F.R. § 404.1526(b)(1).

Plaintiff's insistence that her fatigue, which she reported to her treating doctors several times, satisfies the listing is insufficient.  So too is her mention of

10

having MRIs of her spine.  Contrasting Plaintiff's assertions with the medical

evidence the ALJ cites in his RFC assessment shows why the ALJ decided at Step

Three that Plaintiff does not meet or medically equal the listing for MS.  The ALJ

discussed the medical records showing improvement in MS symptoms (both

physical symptoms and headaches) after taking steroids and engaging in physical

therapy.  (ECF No. 6-1, PageID.41-42).  He also noted that Plaintiff voluntarily

stopped taking steroid medication to pursue pregnancy, which he said was

"inconsistent with [her] allegations of debilitating impairments."  (*Id.* at

PageID.42).  The ALJ discussed the medical records on Plaintiff's mental health

and impairments.  Though Plaintiff was diagnosed and treated for adjustment

disorder, depressive disorder, and neurocognitive disorder, Plaintiff reported that

her mood was better and very good in June 2022 and June 2023, respectively.  Her

depression was in full remission as of June 2023 (*id.* at PageID.619) and her

cognitive functioning was within normal limits during testing in September 2022

(*id.* at PageID.479-80).  These medical facts do not medically equal the severity of

the limitations in Listing 11.09.

In the last appointment before the ALJ's decision, the record notes that

Plaintiff denied "any symptoms to suggest a[n MS] relapse."  (*Id.* at PageID.678).

Plaintiff accuses the ALJ of inaccuracy because he wrote that Plaintiff denied

symptoms of relapse at that appointment, rather than that she denied symptoms

*suggesting* relapse.  The ALJ's choice of phrasing does not meaningfully change

Plaintiff's statement—there were no symptoms of a relapse which is the same as

saying there were no symptoms suggesting Plaintiff was in relapse.

In all, the ALJ's characterization of the evidence as showing controlled,

relatively mild symptoms that do not meet or medically equal the standard of

disability is accurate and that evidence does not reflect or suggest that Plaintiff

meets or medically equals Listing 11.09.   Because the evidence does not raise a

substantial question as to whether Plaintiff meets or equals the listing, the ALJ's

statement about the listing at Step Three is sufficient and the decision at Step Three

is supported by substantial evidence.

2.      Consideration of Plaintiff's Fatigue

Plaintiff says that the ALJ did not address her fatigue in his analysis.  (ECF

No. 9, PageID.697).  She relies on the medical records being "replete with

statements of her fatigue," (*id.*), yet the ALJ did not address fatigue or its effects

on her ability to work full time.  Specifically, she says medical records from May

9, 2022, June 26, 2023, and August 7, 2023, establish that her fatigue interferes

with her ability to complete activities of daily living.  (*Id.* at PageID.698).

Plaintiff's argument is at odds with what is contained in the ALJ's RFC

analysis.  The ALJ expressly mentioned that Plaintiff asserted disability in part

because she experienced exhaustion and fatigue with over-exertion.  (ECF No. 6-1,

PageID.40).  Then, the ALJ discussed the medical evidence concerning Plaintiff's

physical abilities, abilities which Plaintiff asserted were impacted by fatigue in her

extremities.  While Plaintiff complained of fatigue in her legs, the ALJ noted

objective findings repeatedly showing no gait abnormality, impaired coordination,

weakness, or diminished sensation.  (*See, e.g.*, ECF No. 6-1, PageID.421, 584, 589,

596-97, 605, 626, 681).

Though the ALJ was not repeating the word "fatigue" as he discussed the

evidence, the evidence he reviewed either mentioned fatigue but included normal

objective findings or did not mention fatigue and included normal objective

findings.  So Plaintiff is incorrect to say that the ALJ did not address how her

fatigue and related symptoms impact her ability to do and sustain work-related

functions because the ALJ addressed the evidence on her ability to work.

Moreover, what is contained in the three records Plaintiff cites does not

detract from the substantial evidence supporting the ALJ's decision.  On May 9,

2022, a physician concluded, without explanation, that fatigue impaired Plaintiff's

activities of daily living.  (*Id.* at PageID.426).  Yet almost two weeks later, in a

record the ALJ cited, Plaintiff reported doing better with her MS symptoms,

objective examination was normal, and the physician concluded that Plaintiff was

"reasonably stable" and "doing better overall following the steroids."  (*Id.* at

PageID.420-22).  The physician did not mention limitations due to fatigue.  In the

June 26, 2023, record, the physician made no objective statement about leg fatigue.

Rather, the physician noted *Plaintiff's complaint* of fatigue.  (*Id.* at PageID.582).

Objective examination of her lower extremities revealed normal strength and

motor function throughout.  (*Id.* at PageiD.583).  Not only did objective

examination fail to support the complaint of fatigue on June 26, 2023, the ALJ

found Plaintiff's subjective statements—which are the only evidence of fatigue

impacting her functioning—to be inconsistent with the medical evidence.  (*Id.* at

PageID.41).  Plaintiff did not challenge that finding.  And the ALJ discussed this

record, so the Court presumes he saw the notation about Plaintiff's complaint.  (*Id.*

at PageID.42).  Lastly, on August 7, 2023, the physician noted Plaintiff's

"prominent symptoms" including "fatigable leg weakness," but also found normal

strength and motor function in Plaintiff's lower extremities.  (*Id.* at PageID.681-

82).  The ALJ discussed this medical record, too.  (*Id.* at PageID.42).  What is clear

is that the ALJ considered the evidence concerning fatigue but concluded that the

objective findings on Plaintiff's strength and motor function, i.e., her ability to

move and engage in various tasks, were sufficient to support the decision.

Plaintiff's argument that her fatigue rendered her disabled amounts to a

request that the Court reweigh the evidence, which it will not and cannot do.  Her

burden was to show that the ALJ's decision is not supported by substantial

evidence, but she did not meet that burden.  That there may be evidence supporting

Plaintiff's position is not a basis to reverse the ALJ's decision.  That decision is supported by substantial evidence, so it is affirmed.

### F.      Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, Plaintiff's motion for summary judgment is **DENIED**, the Commissioner's motion for summary judgment is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: August 28, 2025                            s/Curtis Ivy, Jr.
                                                 Curtis Ivy, Jr.
                                                 United States Magistrate Judge